

Houston Goddard
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Stephen Williams Knox

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Hon. Wm. Fremming Nielsen

| United States, | No. 2:20-cr-52-WFN |
|---|---|
| Plaintiff, | Sentencing Memorandum |
| v. | |
| Stephen Williams Knox, | |
| Defendant. | |

I. Introduction

Stephen Knox has pleaded guilty to failing to register as a sex offender, and he will admit supervised release violations to the same effect. His advisory guidelines range for the new crime is 15–21 months, and he will ask the Court to impose a guidelines sentence of 15 months—with any additional sanction for the supervised release violations to run concurrently. Here is why:

*First*, a 15-month sentence is sufficient for Mr. Knox's offense conduct of absconding and staying in homeless shelters for 29 days without registering. There is no excuse for Mr. Knox's willful violation, but it is important to keep in mind that he suffers from mental health issues and that there is no suggestion he engaged in any criminal conduct (beyond failing to register) during the 29 days he resided at homeless shelters.

*Second,* the advisory guidelines would have Mr. Knox punished three times over for his offense conduct. That conduct would drive not only his offense level, but also his criminal history and his supervised release guidelines.

*Third,* Mr. Knox is not in good health. A sentence beyond 15 months would likely mean that he would be transported from Spokane County Jail to Bureau of Prisons (BOP) custody, placing him at risk of exposure to COVID-19 and putting his health at further risk.

## II. Background

For his entire life, Mr. Knox has struggled with mental health issues—primarily severe and chronic depression (dysthymia) coupled with anxiety.[1] While his condition has affected him deeply (he spent a portion of his life panhandling on the streets), he had no issues with the law for the first 55 years of his life.[2] Then, in 2015, he was convicted in a "peer-to-peer" child pornography distribution case.[3] This Court sentenced Mr. Knox to 60 months' incarceration, followed by 10 years of supervision.[4] Mr. Knox served his time and began his term of supervision at a clean-and-sober group home in Spokane.[5]

Mr. Knox—in his 60s, being supervised for the first time in his life, and still struggling with mental health issues—chafed against supervision. He violated his conditions by acquiring a phone, accessing adult pornography, and lying to his Probation Officer about it.[6] He appeared on those violations in December 2019, and this Court allowed him time to show good conduct.[7] He did not take advantage of that opportunity. Instead, his anxiety and depression got the better of him. He became increasingly frustrated with life in a group home, especially because doctors had told

---

[1] ECF No. 30 (Draft PSR) at ¶¶ 75, 79.
[2] *Id.* at ¶ 69.
[3] *Id.* at ¶ 43.
[4] *Id.*
[5] *See* case no. 2:15-cr-6-WFN, ECF No. 66-1 at 2.
[6] Case no. 2:15-cr-6-WFN, ECF No. 76.
[7] Case no. 2:15-cr-6-WFN, ECF No. 80.

him they would not perform the double knee replacement surgery he needs until he was living somewhere more conducive to recovery.[8] He began having painful headaches, and he contemplated suicide.

In late January 2020, Mr. Knox went to CHAS Health hoping to find relief for his constant headaches. CHAS called an ambulance to have him taken to the hospital. At the hospital, doctors ran numerous tests, including a CAT scan, but could not determine the cause of Mr. Knox's headaches. This was a breaking point for Mr. Knox, and the very next day (January 23, 2020) he made the poor decision to run from his problems.

Twenty-nine days later, on February 21, 2020, the U.S. Marshals arrested Mr. Knox at a homeless shelter in Utah.[9] Mr. Knox immediately confessed to his crime, stating: "I messed up. I know what I did, and I tried to get away because everything was just going."[10] He appeared before a Magistrate Judge in Utah, and was then held at the Nevada Southern Detention Center (a private prison used by the BOP as a transit hub) for nearly three months before being transported to Spokane for an initial appearance

---

[8] *See* Draft PSR at ¶ 73.
[9] *Id.* at ¶ 20.
[10] *Id.* at ¶ 22.

on supervised release violations.[11] In June 2020, the grand jury returned an indictment charging him with failure to register.[12]

### III. Discussion

The advisory guidelines range for Mr. Knox's crime of failure to register is 15–21 months.[13] The advisory guidelines range for his supervised release violations is 4–10 months.[14] While the guidelines recommend that these sentences be run consecutively, the Court has discretion to run them concurrently.[15] There are a number of reasons why running Mr. Knox's sentences concurrently would make sense:

*First,* 15 months is sufficient punishment to comply with the § 3553(a) sentencing factors for the new crime and the violations. Mr. Knox's conduct was essentially absconding and not registering for 29 days, and a 15-month sentence would be roughly 16 days of incarceration for each day he was gone. Mr. Knox's history and characteristics are those of a 63-year-old man with mental health issues and one prior conviction. While that prior conviction was for child pornography, Mr. Knox has no

---

[11] *See* case no. 2:15-cr-6-WFN, ECF Nos. 85, 93. Mr. Knox had previously appeared for (and admitted) the violations noted at p. 2 above. Following his abscondment, he was violated for failing to report to his Probation Officer, missing treatment, changing his residence without permission, leaving the district without permission, failing to register, and possessing a smart phone without permission. ECF Nos. 81, 86. Apart from the failure to register, there is no indication or allegation that Mr. Knox violated the law in any way.
[12] ECF No. 1.
[13] Draft PSR at ¶ 120.
[14] Case no. 2:15-cr-6-WFN, ECF No. 86-1 at 3.
[15] *See* USSG §7B1.3(f). In light of *U.S. v. Booker*, 543 U.S. 220 (2005), such policy statements are advisory.

history of hands-on offenses. He has no issues with drugs or alcohol.[16] And he has now learned the hard way that there are severe consequences should he fail to register or otherwise fail to comply with his conditions of supervision. That lesson will serve to deter him from making further poor decisions.

*Second,* while the guideline ranges calculated by the U.S. Probation Office are correct, it is important to understand how Mr. Knox's offense conduct could effectively punish him three times over. First, as is always the case, Mr. Knox's offense conduct is the basis of his Offense Level. Next, Mr. Knox's offense conduct increased his criminal history score by two points because he committed the crime while on supervision. This bumped his Criminal History Category from II to III, thereby increasing his guidelines range from 12–18 months to 15–21 months. Finally, Mr. Knox's offense conduct was a violation of his supervised release conditions, thereby adding an additional guidelines range of 4–10 months. When determining the appropriate sentence, the Court could take into consideration that Mr. Knox's offense conduct drives not only his offense level, but also his criminal history category and his supervised release guidelines.

*Third*, Mr. Knox's health weighs against a sentence that would return him to BOP custody. Mr. Knox is not in good health. In addition to his mental health issues and his need of medical attention for various ailments (including the need for double

---

[16] Draft PSR at ¶ 84.

knee replacement surgery), he is obese.[17] Per the Center for Disease Control and Prevention, Mr. Knox's obesity puts him at increased risk of severe illness were he to contract COVID-19.[18] By the time of sentencing, Mr. Knox will have served approximately 11.5 months in federal custody.[19] A 15-month sentence would, with "good time," work out to a sentence of approximately 12.75 months behind bars—meaning Mr. Knox would have roughly another five weeks to serve following his sentencing hearing. It is very likely he would serve that time at Spokane County Jail. However, were the Court to impose a longer sentence, it is likely Mr. Knox would be moved to a BOP facility. That transport and placement in a new facility would increase Mr. Knox's risk of exposure to COVID-19, placing his health (and his life) in danger.

### IV. Conclusion

Stephen Knox went the first 55 years of his life without getting in any trouble. Then, after serving a five-year sentence for his one and only conviction, he did not adjust well to life on supervision and life in a group home. With his already-precarious mental health deteriorating, he ran from his issues. He spent 29 days at homeless

---

[17] *Id.* at ¶¶ 71–74. Mr. Knox's height of 5'11" and weight of 250 pounds results in a body mass index (BMI) of 34.9. A BMI of 30 or greater is considered obese.

[18] CDC, People with Certain Medical Conditions, available at https://bit.ly/3o0t49N.

[19] While page 1 of the Draft PSR correctly states that Mr. Knox "has been in federal custody *for this case* since June 8, 2020" (emphasis added), Mr. Knox had by that point already been in federal custody for over three months on his pending supervised release violations. He has been in continuous federal custody since his arrest in Utah on February 21, 2020. Draft PSR at ¶ 5. He is entitled to credit for that time under 18 U.S.C. § 3585(b).

shelters, and it solved nothing. It just landed him right back in trouble. He has already served nearly a year in custody for his actions, and he has learned his lesson.

To help set Mr. Knox up for success on his next term of supervision, the Federal Defenders have been in contact with Mr. Knox's family and with Catholic Charities and other local organizations to arrange for housing options that would allow Mr. Knox to live on his own. This would permit Mr. Knox to have his double knee replacement surgery and would hopefully alleviate the frustration and stress that previously affected his mental health. Mr. Knox understands that he cannot run from his troubles anymore, and he is looking forward to proving that he can and will comply with his terms of supervision.

Dated: January 19, 2021

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Stephen Williams Knox

        s/ J. Houston Goddard
        J. Houston Goddard, NY #4545851

### Service Certificate

I certify that on January 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorney James Goeke.

        s/ J. Houston Goddard
        J. Houston Goddard, NY #4545851